The next case is Sowe v. Pall Corporation. Good morning, Your Honors. My name is Ed Kopko. I'm an attorney representing Amadou Sowe. Precedent of this court dictates that age discrimination cases be resolved on the merits. The district court's error in this case is that it viewed the facts through the eyes of an educated, experienced federal judge instead of viewing the facts as they actually occurred through an immigrant from the who had a very vested interest in strictly following the instructions that were given to him regarding the separation agreement. A German company purchased Pall and began a process of eliminating all of the older, higher earnings for their employees. Mr. Sowe was one of those employees. On January 26, he was given the separation agreement and he was told at that time and subsequently confirmed in an email that that separation had to be returned to a five-day period for him to review this under the Older Workers Act. But the actual facts, and these are the facts that the district court overlooked and supplanted the discretion of the jury, the actual facts were that he had to return that to Pamela Denmark. This is a reoccurring fact. The agreement says in bold on the front that it has to be returned on or before February 15th and that gave him more than the 45 days required, right? Yes, Your Honor. The error, the error in that and the error that the district court made is overlooking the fact that Pamela Denmark personally told Sowe that she was leaving the Pall Corporation. She was also getting the axe. She said, you have to deliver this to me on February 1st. No, there's an email where your client asks what the deadline is and on January 19th is told the deadline from Ms. Denmark, the deadline is February 15th. Remember, I won't be here after February 1st. So it's clear from that email that the deadline is February 15th and it doesn't relate to whether she's going to be there or not. She didn't say to him, I'm leaving on February 1st, you have to get it to me. Your Honor, that is your most respectfully, your very sophisticated understanding of that. When you're looking at this through the eyes of Mr. Sowe, now remember here, this is the important part about it. It's from the person you're claiming he had the confusion about. This person says the deadline is February 15th. What's the confusion is, sir, and this we claim the benefit of this confusion and say that it's a jury issue. The confusion is that at prior times Pamela Denmark and in the separation agreement itself on seven different occasions says you have to return this release to Pamela Denmark. Pamela Denmark was not there on the 15th. To the employer, attention, Pamela Denmark. Doesn't say to the employer, parentheses, attention. Fair enough, Judge. Okay, doesn't that necessarily follow that Pamela Denmark has to be there on February 15th? Now, if he wants to grasp this $68,000 that he's entitled to get under the separation agreement, he's thinking that he has to very strictly comply with what he is being told. This conversation that I'm having with your honor here is emblematic of just exactly why we need a jury trial here, because there are two different reasonable interpretations. Under the precedent of this court, these cases are to be resolved on the merits. Most respectfully, your honor, you are bringing up some very good points, and I submit to you that I have some good points here. Judge Scullin should not have resolved that in favor of the defendant. Those are jury issues, and more importantly, this court says in age discrimination case, we very much favor a resolution of these cases on the He's never been disciplined. He loves being an American. He wants to do this thing right. So he's being told, yes, this has to be back by February 15th, and then he's also being told, you have to deliver this to Pamela Denmark. Pamela Denmark is not going to be there because she is losing her job. She's leaving on February 1st. He was exchanging correspondence with other people in the HR department during this period. If he was bewildered at the idea that he had to return it to somebody who wasn't going to be there, and actually had said to the attention of that person, I don't see why he wouldn't have raised it. Let's explore that, your honor. I actually think that that's a very good point that your honor brings up. What does that mean, to the attention of that? You know, we're lawyers. You're judges. You have an idea about to the attention of that person. If you're from the Ghana, couldn't you just as reasonably say, I better hand this to her in person. I have to bring this to her attention. Isn't that also a reasonable interpretation of that, your honor? Doesn't that entitle us to a jury to determine, did Paul create the ambiguity in this document that violates the Older Workers Act and the CFR? The burden is on them to make this clear and unambiguous. Everything that your honors are raising here is actually supporting my argument. This is not clear. This is not unambiguous. This man, his whole life is being turned upside down. It's the purpose for the Age Discrimination Act. Either he strictly follows everything that he's being told to do, or he doesn't get the $68,000 in severance pay. Okay, it is Paul's responsibility to make this clear. Paul could have straightened all of this stuff out. They didn't do that, and the harm to him, thank you your honor, the harm, may I just finish this one point with your indulgence please. The harm to him, he then sees, he turns this in on February 1st because he thinks that's what he has to do to get the money. He sees online, so he's resigned, he signed the release, everything is done. He sees online that Paul is advertising on February 12th, February 12th, for his replacement. He's thinking, my goodness, I just resigned. If I had taken up until February 15th, I would not have submitted my resignation, and they're filling my job that I had for 18 years. That's not right, judge. That's not right to do that to someone, and if we're to follow the precedent of this court, this has to be resolved on the merits. Judge Scullin made a mistake here. Thank you. Good morning, your honor, and may it please the court. My name is Ray Baldwin, and I'm here on behalf of the Paul Corporation. Mr. So, knowingly and voluntarily, waived his rights to sue the Paul Corporation. The agreement he was provided told him that he had 45 days to consider it. It told him he had seven days to revoke it. It told him that he would receive not $68,000, but $51,000 in consideration for releasing those rights, consideration to which he was otherwise not entitled. It told him what the decisional unit was, the Central Technology Organization, and as required, it identified by position, title, and age, all those who were within the Central Technology Organization, and who were eligible to receive severance when they lost their jobs, and those who would remain, and importantly, your honors. Is it the case that this plaintiff was let go in a reduction in force, and yet his job was posted to be filled a couple days later? It is not the case. It's a very odd kind of reduction in force. I don't see what you get in reducing force by firing this one and hiring that one. It is not, in fact, the case, your honor. Mr. Sau was a master's prepared mathematician and served since 1988 as the principal scientist within the Central Technology Organization. The job that was posted was an engineer to position. I'm quite confident, based on his experience and abilities, that Mr. Sau could have done that job, but that was not his job, and of course, he never applied for it. As the court would see in the record, Mr. Sau began to walk away from that statement that it was his job in deposition and at the lower court, and in fact, testified only that it was a job he was qualified for. I dare say that there were many jobs at the corporation for which a man of his ability and knowledge was qualified for. The agreement advised Mr. Sau to consult with an attorney, and he did with Mr. Kopko. Mr. Sau testified that he and his attorney went over every fine line of the agreement. After that review and after at least two inquiries with human resources, and by the way, Mr. Sau testified that he knew the head of human resources, Ms. Carr, and he knew of Ms. Denmark, so he certainly knew how to contact human resources if he had questions, but after that review, Mr. Sau signed the agreement and returned it, not on February 1, as Mr. Kopko said, but on February 1. He was representing that he read it, that he had plenty of time to consider it, and that he understood it. As Judge Scullin found below, the agreement complies with the requirements of 29 U.S.C. Section 626. Mr. Sau raises four primary arguments here on appeal. One is that he was somehow confused about the 45-day period. Justice Livingston hit the nail on the proverbial head that the agreement contains a large box right at the top that says, delivered to employer on or before February 15, 2016. This idea that somehow when a request is made that a document or correspondence be delivered to the employer, that is the only person to which it could be delivered is lacking any support in the law, contrary to common sense and contrary to the plain terms of the agreement, which makes clear, as Judge Bianco said, that it says deliver it to the employer. Mr. Sau also argues that the use of the word certain somehow created confusion with respect to the decisional unit. I submit to the court that it did not, as evidenced by Mr. Sau's own complaint at paragraph 41, which states, the RIF expressly states the decisional unit to be the Central Technology Organization Division of Paul Corporation. Mr. Sau concedes there were no false statements made to him, that nobody duped him into signing the agreement. Mr. Sau is a master's prepared mathematician. He met with an experienced attorney. He reviewed every fine line of the agreement. That agreement met all the requirements of the OWBPA, and Mr. Sau signed it and received his $51,000 in compensation. We ask the court to affirm the grant of disputed material facts here, and in fact, the sole effort to create a disputed material fact turned out to be the alteration, improperly, of an email communication. Thank you. In order to sustain the district court, your honors have to be convinced that there are no genuine issues of material fact. Just this argument, just what we did here this morning, demonstrates there are genuine issues about the return date on this. There were, there are genuine issues regarding the employment. Your honor, I would respectfully revite your attention to the record A149, where Mr. Sau's affidavit says, on February 12, 2016, I saw the online Paul advisement for the job, advertisement for the job duties and responsibilities identical to the job that I had performed. That's the answer to your honor's question. That creates a genuine issue of material fact of whether they were setting up an older employee to lop him off so they could get someone younger and pay them less money. Mr. Sau did everything that he was told to do, and he deprived himself of the opportunity, so says Judge Scullin, to come after Paul for misleading him. They created this ambiguity. That violates the CFR, that violates the Older Workers Act, and it violates the age discrimination. They could have straightened this out. Your honor asked the question about the employer. Counsel's answer to that is extraordinarily misleading because, in fact, it does say employer in one other instances, seven other instances, it says to the attention of Pamela Denmark. You have to give this back. Mr. Sau is thinking, I have to give this to Pamela Denmark, to the attention of Pamela Denmark. When he does that, they got him. They got his signature on this stuff, and they almost immediately, actually shamelessly, advertise for a near-identical job. How is that a proper reduction in force? These are identical to the facts that I need to prove to a jury, and that's what I'm asking the opportunity to do. Thank you so much. Thank you both, and we will take the matter under advisement.